## MILTON G. VAN METER *v.* JAMES FRENCH VAN METER, ET AL.

[No. 16, October Term, 1944.]

*Decided November 15, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, and HENDER-SON, JJ.

*William C. Walsh* and *William S. Jenkins* for the appellant.

*Horace P. Whitworth* and *F. Brooke Whiting* for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal was brought by Milton G. Van Meter from an order of the Orphans' Court for Allegany County refusing to probate the will of his mother, Annie M. Van Meter, deceased.

The will was written by Russell Saville, resident of Chicago, who formerly resided in Cumberland and served

as a director of the George's Creek Coal Company. On July 8, 1936, Mrs. Van Meter came from her home at Cresaptown to the office of the coal company in a bank building in Cumberland for the purpose of executing the will which Saville had prepared at her request. Appellant, 63 years old, a grocer, of Cresaptown, who was named executor, accompanied his mother to the office. After the instrument was read to Mrs. Van Meter and approved by her, she executed it by making her mark on each of the three pages. At the bottom of the first and second pages Saville subscribed his name as "witness to mark". On the third page the testatrix subscribed her name and affixed her seal and certified that she also signed each of the two preceding pages "for identification purposes". Here again were written the words "witness to mark" with the signature of Saville.

Then follows the attestation clause, which reads as follows: "Signed, sealed, published and declared by Annie M. Van Meter, the above named testatrix, as and for her last will and testament, in the presence of us, who, at her request, in her presence, and in the presence of each other have hereunto subscribed our names as witnesses. We further certify that the said testatrix did in like manner execute the two preceding pages hereof for identification purposes, at Cumberland, Maryland, the day and year above written." Below this clause are the signatures of Carl C. Hetzel and Bancroft Hetzel, witnesses.

The Maryland testamentary statute provides that, except in case of a testator who is outside the area of the United States and is serving with any of the armed forces of the United States, a will is void unless it is in writing and signed by the testator, or by some other person for him in his presence and by his express direction, and is attested and subscribed in the presence of the testator by two or more credible witnesses. Acts of 1943, Ch. 799, Code, 1943 Supp., Art. 93, Sec. 336. The will of Mrs. Van Meter bears on its face every indication of proper execution. Carl C. Hetzel, one of the subscribing witnesses, died before the death of the testatrix. Under

our statute, if any witness to a will shall die before its probate, proof by any credible witness of the signature of such deceased witness shall have the same effect upon the probate as if the deceased witness had been present at the probate and had testified that the will was duly executed. Code, 1939, Art. 93, Sec. 368. The Orphans' Court refused to probate the will because Bancroft Hetzel, the surviving witness, swore that, notwithstanding that he subscribed his name to the attestation clause, he actually did not sign his name in Mrs. Van Meter's presence.

The provision of the Maryland statute that a will must be attested and subscribed by the witnesses in the presence of the testator had its origin in the Statute of Frauds, and is substantially the same as the provision enacted in most of the other States. Appeal of *Reaver's Ex'rs,* 96 Md. 735, 54 A. 875, 94 Am. St. Rep. 610. The statute does not require the witnesses to see the testator sign the will. However, if the instrument was signed by the testator out of the presence of one or more of the witnesses, it is essential that he should in some way acknowledge it to them as his act. The attestation should be made at the testator's request, express or implied, but it is not necessary that the testator should verbally declare the instrument to be his will, if his conduct or the instrument itself apprises the witnesses of that fact. *Woodstock College v. Hankey,* 129 Md. 675, 680, 99 A. 962. A formal attestation clause is not an essential part of a will. The validity of the execution of a will depends, not upon an attestation clause, but upon conformity of the execution with the requirements of the statute, and also the testimony of the subscribing witnesses if they are produced and examined. *Barricklow v. Stewart,* 163 Ind. 438, 72 N. E. 128; *Norton v. Goodwine,* 310 Ill. 490, 142 N. E. 171; *Thompson on Wills,* 2d Edition, Sec. 132. The advantage of an attestation clause is found in its evidential weight in showing that the will was properly executed. The rule is well established that an attestation clause reciting facts necessary for the valid execution of a will is prima facie evi-

dence of the due execution of the will, if it bears the genuine signatures of the testator and subscribing witnesses. *Woodstock College v. Hankey,* 129 Md. 675, 681, 99 A. 962; *Bioren v. Nesler,* 77 N. J. Eq. 560, 78 A. 201. The presence of an attestation clause with a recital of the formalities required by law is desirable for the purpose of furnishing presumptive evidence when the subscribing witnesses are deceased or beyond the reach of process, and serving as a safeguard against the danger of imperfect recollection or deliberate misrepresentation of the facts. 1 *Schouler on Wills, Executors and Administrators,* 6th Edition, Sec. 555.

It is true that, even though a person writes his name as a witness to a will under an attestation clause certifying that he attested the testator's signature and that he subscribed his name in the testator's presence, nevertheless he may testify to the contrary, because the court desires to ascertain the truth. The court may refuse to probate where there is nothing but an attestation clause on one side, and decidedly adverse testimony of the subscribing witnesses on the other. But the prima facie presumption that the recitals of the attestation clause are true will not usually be overcome merely by the fact that one of the subscribing witnesses testifies that the statutory requirements were not complied with. *Hoover v. Keller,* 339 Ill. 126, 171 N. E. 163. As the attestation clause preserves in permanent form a record of the facts attending the execution of the will and is prima facie evidence of the facts therein stated, the burden of proof is upon the caveator to show by clear and convincing evidence that the facts therein stated are not true. *In re Seymour's Will,* N. J., 114 A. 799. The court views such contradictory testimony with great caution and scans it with grave suspicion, because the testimony after the testator's death contradicts the written evidence given on the instrument during the testator's lifetime, and thus reflects on his own credibiliy, and is contrary to the confidence placed in him by the testator. *Massey v. Reynolds,* 213 Ala. 178, 104 So. 494, 498; *Stuck v. Howard,*

213 Ala. 184, 104 So. 500, 504. To permit a subscribing witness easily to overcome his formal and solemn declaration of attestation by oral statement that he did not sign in the testator's presence would have the result of leaving every will open to attack by subscribing witnesses.

In this case the attestation clause, signed by two witnesses, raised a prima facie presumption that the will was executed in accordance with the law of Maryland. The testimony of Bancroft Hetzel must be viewed with suspicion because he repudiated his own formal statement. His testimony is made even more incredible by the fact that it is conflicting. On January 14, he made oath that his brother signed the will in his presence and then he signed it; but on January 28 he made oath that his brother had already signed the will in another room before he brought it to him. This change of story is very significant, because Saville, the draftsman of the will, testified (1) that he read the instrument to the testatrix, who thereupon stated it was in accordance with her wishes: (2) that she made her mark in the presence of himself, the Hetzel brothers, and her son, and (3) that he signed his name as a witness to her mark on each of the three pages in the presence of the testatrix, her son and the Hetzel brothers. This testimony was corroborated by appellant. The overwhelming weight of the evidence shows that the testatrix signed her mark in the presence of both of the Hetzels and that both of the Hetzels signed in the presence of the testatrix.

In addition, Russell Saville was likewise a subscribing witness. Hence there were three witnesses to the will, one more than is required by the law of Maryland. It is true that Saville signed as a witness to the mark. But when a person signs his mark to an instrument with the intention of executing it as his will, the mark of itself constitutes a signature sufficient to comply with the statute. *Quimby v. Greenhawk*, 166 Md. 335, 345, 171 A. 59. Attestation of a will is the act of witnesses in seeing that those things exist and are done which the statute requires. After the witnesses attest a will and

subscribe their names, the statute is complied with. *Tilton v. Daniels,* 79 N. H. 368, 109 A. 145, 8 A. L. R. 1073. It is beyond doubt that Saville attested and subscribed the will in the presence of the testatrix. He prepared the will, arranged for Mrs. Van Meter's visit to his office, heard her declare that the instrument was drawn in accordance with her wishes, saw her make her mark on each of the three pages, and signed his own name three times as a witness to her signature. The mere fact that his signature is accompanied by the words "witness to mark" does not disqualify him from being a subscribing witness.

As the will was executed in compliance with the requirements of the statute, we must reverse the order of the Orphans' Court refusing probate.

> *Order reversed, and cause remanded for further proceedings, the costs to be paid out of the estate.*